IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID A. TAYLOR,**

    **Plaintiff,**

                                                                                        **Civil Action 2:14-cv-2338**
                                                                                       **Judge Gregory L. Frost**
    **v.**                                                                                 **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

<u>**REPORT AND RECCOMENDATION**</u>

Plaintiff, David Taylor, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the Undersigned for consideration of Plaintiff's Statement of Specific Errors (ECF No. 10), the Commissioner's Memorandum in Opposition to Plaintiff's Statement of Errors (ECF No. 13), and the administrative record (ECF No. 9).  For the reasons that follow, it is recommended that the Court **OVERRULE** Plaintiff's statement of errors and **AFFIRM** the Commissioner's decision.

### I.  BACKGROUND

This matter involves the most recent of several applications made by Plaintiff for disability and supplemental security income benefits.  Plaintiff filed an application for child's benefits and supplemental security income on July 5, 2006, alleging that he was disabled since October 1, 2004, at age 21.  (R. at 71, 11.)  Plaintiff's applications were denied initially and upon reconsideration.  (R. at 71.)  Subsequently, Administrative Law Judge ("ALJ") Larry A. Temin

determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 71−82.) Specifically, ALJ Temin determined that Plaintiff possessed the following severe impairments: lumbosacral spine degenerative disc disease and scoliosis; thoracic spine degenerative disc disease; and impulse control disorder. (R. at 73.) ALJ Temin also determined that Plaintiff's impairments did not meet or equal one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) ALJ Temin further found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work with the following restrictions:

> [Plaintiff] can lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently, and stand and/or walk for up to 6 hours in an 8-hour work day. He should not stoop, crawl, balance, climb ladders, ropes, or scaffolds, use vibratory tools or power tools, or work at unprotected heights. He can only occasionally kneel, crouch, twist, and climb ramps or stairs. He cannot interact with the general public, and cannot interact with co-workers or supervisors more than occasionally. His job should not require more than ordinary and routine changes in work setting or duties.

(R. at 75.) Accordingly, on June 11, 2009, ALJ Temin concluded that Plaintiff could perform work that existed in significant numbers in the local and national economies and that Plaintiff was therefore not disabled under the Social Security Act. (R. at 80−81.) The Appeals Council adopted ALJ Temin's determination.

On April 25, 2011, and May 5, 2011, Plaintiff filed new applications alleging that he became disabled on October 1, 2004, because of the following: curvature of the spine, mild schizophrenia, homicidal tendencies, and inferiority complex. (R. at 221−24, 90.) Plaintiff later alleged an amended onset date of June 12, 2009, one day after ALJ Temlin's unfavorable determination as to Plaintiff's prior applications. (R. at 232.) Plaintiff's new applications were denied initially and upon reconsideration. (R. at 88−148.) A hearing was held by ALJ Nino A. Sferrella on June 11, 2013, at which Plaintiff, represented by counsel, appeared and testified. (R.

at 28−67.) Vocational expert ("VE"), John R. Finch, also appeared and testified. (*Id*.) On June 27, 2013, ALJ Sferrella determined that Plaintiff was not disabled. (R. at 11-24.) The Appeals Council denied Plaintiff's request for review and adopted ALJ Sferrella's determination as the Commissioner's final decision. (R. at 1−5.) Plaintiff then timely commenced this action.

## II.     HEARING TESTIMONY

### A.     Plaintiff's Testimony

At the June 11, 2013 hearing, Plaintiff testified that he does not work because of his back pain issues. (R. at 49.) Plaintiff stated that he can sit for four hours before needing to lie down for an hour or two to relieve his back pain. (R. at 38.) Similarly, Plaintiff testified that he can lift 50 pounds but must lie down immediately after. (R. at 40.) On the other hand, Plaintiff testified that he can probably lift 20 pounds for about half an hour, and can probably lift 10 pounds for an hour or an hour and a half. (R. at 40−41.) Plaintiff stated that he avoided prescription pain medication prior to the hearing but took over the counter ibuprofen because it helps his back recover more quickly after exertion. (R. at 42.) Plaintiff further testified that he was "not sure" if his back pain had worsened since ALJ's Temin's unfavorable determination on June 9, 2009. (R. at 37.) Plaintiff instead explained that his back pain had "stayed steady at the level it was at," although he also stated that it "may have gotten a little worse." (*Id*.)

Plaintiff testified that he had leg pain, but agreed that very little of his pain was due to his legs and that most of his pain was because of his back problems. (R. at 39.) Plaintiff testified that after standing for two to two and a half hours, he experiences throbbing in his left ankle and a numbness in his legs that feels similar to having his legs "encased in cement." (R. at 39−40.) Plaintiff also testified that this issue with his legs was "about the same" as it had been before the first unfavorable determination on June 11, 2009. (R. at 40.)

3

Plaintiff testified that he did not regularly see a family doctor unless he was sick or needed a referral. (R. at 45−46.) Plaintiff explained that he did not seek treatment from a surgeon for his back pain for the two years after the first unfavorable determination because "every place" he went told him nothing that could be done for him. (R. at 41.) Plaintiff stated that he did not seek physical therapy after having a single session in June of 2012. (R. at 45−46.) Plaintiff also stated that a doctor never told him that his weight was an issue. (R. at 43.)

Plaintiff testified that when he was seventeen, he received an unofficial diagnoses of schizophrenia from a counselor who was not authorized to make an official diagnosis. (R. at 50.) Plaintiff also testified that was never treated for schizophrenia. (Id.) Plaintiff explained that he had a short temper, but that he had learned to control it and would separate himself from others when angry. (R. at 47.) Plaintiff also described having a "considerable number" of homicidal thoughts, but never acting on them. (Id.) Plaintiff also stated that although he probably would not do well if required to work with a large crowd, or with people on a regular basis, he did not work because of his back pain and not his mental health issues. (R. at 49.) Plaintiff testified that although his mental health issues cause him to be a little "gruff" and "rough to be around" sometimes, his mental health problems were manageable and did not cause a problem with work. (R. at 53−54.)

Plaintiff testified that he lives on the same property as his mother but alone in a separate house. (R. at 54.) In exchange for those living arrangements, Plaintiff testified that he helps take care of the house and does yard work, though what he can do is limited. (R. at 54.) Plaintiff stated that he drives his mother's car to go grocery shopping twice a month and to doctor appointments when he has them. (R. at 58−59.)

B. **Vocational Expert Testimony**

At the hearing, the VE testified that Plaintiff did not have any past relevant work. (R. at 60.) The VE further testified that a hypothetical person with Plaintiff's age, educational background, and the same RFC contained in the first unfavorable determination would be able to do other work that existed in significant numbers in the local and national economies, including work as a mail clerk, sorter, and garment folder. (R. at 61.)

### III. MEDICAL RECORDS

A. **Treatment History and Records**

Medical records from Fairfield Diagnostic Imaging indicate that MRIs of Plaintiff's lumbo sacral and thoracic spine were taken on December 5, 2008. (R. at 326.) The lumbo sacral MRI revealed that Plaintiff had slight scoliosis of the spine and moderate to large herniations at the L-4, L-5, and L5-S1 discs. (*Id*.) The lumbo sacral MRI also revealed that Plaintiff's spinal canal seemed to be "of reduced caliber" and that his "herniated discs were displacing the traversine nerve root at every level." (*Id*.) The thoracic MRI revealed herniations of discs at multiple levels, including small protrusions at the T3-4, T5-6, and T8-9 discs, and moderate protrusions or herniations at the T7-T8 disc. (R. at 331.) The thoracic MRI also revealed a moderate spur on the left side at the T9-T10 level. (R. at 331.) The records state that despite these small to moderate protrusions, the spinal cord did not seem compressed or deformed at any level, and thus, it was unknown if the findings were of any significance. (*Id*.)

The medical records reflect that Plaintiff sought treatment from Dr. Gary Rhea on March 13, 2009. (R. at 353−57, 346−51, 358−63.) Dr. Rhea wrote that Plaintiff was 5-feet-9-inches tall and weighed 220 pounds. (R. at 360.) Dr. Rhea also wrote that Plaintiff complained of pain going down his back and into his left leg, but that Plaintiff indicated that 91% of his pain was in

his back. (*Id*.) Dr. Rhea's notes indicate that Plaintiff was alert, oriented, and cooperative; possessed full range of motion in his neck, shoulders, elbows, and wrists; exhibited normal strength in his upper extremities; and had normal reflexes in his upper extremities and right ankle. (*Id*.) Dr. Rhea's notes also indicate that Plaintiff's reflexes in his knees and left ankle were low normal. (*Id*.) Dr. Rhea wrote that Plaintiff was bothered by straight leg raises on the left side, and that Plaintiff could "flex to about 60 degrees and it hurts down [Plaintiff's] leg." (Id.) Dr. Rhea also wrote that he reviewed Plaintiff's MRIs and noted that Plaintiff "has an impressive amount of disk herniation . . . .on the left side" and that at the "lower disk levels" a "good sized disk . . . may be causing part of his pain." (*Id*.)

     Dr. Rhea's notes indicated concerns that Plaintiff might have schizophrenia and that Plaintiff would need to seek treatment for that before Dr. Rhea could treat him. (*Id*.) Dr. Rhea wrote that Plaintiff's symptomology was "not very clear cut" and that the schizophrenia "makes it even more difficult to know exactly how much pain [Plaintiff] is in." (R. at 326.) Dr. Rhea also wrote: "I do not think this man can work . . . . If he requires more evidence of this he will need to be seen by someone else." (R. at 361.) In a letter dated April 16, 2009, Dr. Rhea opined that surgery would have a low likelihood of making Plaintiff better because Plaintiff's primary complaint is back pain, and although surgery for leg pain "helps quite a bit," surgery for back pain has a "high failure rate." (R. at 357−58.) Dr. Rhea also opined that he believed that Plaintiff was 100% disabled. (R. at 358.)

     Plaintiff did not seek treatment for his schizophrenia or other mental health issues. Nor did Plaintiff seek medical treatment for his back pain until he underwent a physical therapy evaluation three years later on March 29, 2012. (R. at 400−405.) The physical therapy records from Plaintiff' evaluation state that he described a history of mild back problems since he was 12

6

years old that had worsened since 2000. (R. at 400.) The records also state that Plaintiff indicated that he experienced increased pain in his left leg with activity and pain in the right leg when he "does more activity." (R. at 400.) The records indicate that Plaintiff described his pain as a being a 3 to 5 on a 10 point scale that day and that his pain was, on average, between 0 and 3 on a 10 point scale. (*Id*.) The records also indicate that Plaintiff reported taking ibuprofen and trying to do light yard work and chores around the house "on good days." (*Id*.) The records state that Plaintiff was alert, oriented, in no apparent distress; ambulated with normal gait; and was positive in straight leg raise, the left greater than the right. (R. at 401.) The examiner noted that Plaintiff's problems were: increased pain, decreased trunk range of motion, decreased lower extremity strength, and lack of a home exercise program. (*Id*.) Plaintiff's rehabilitation potential was described in the notes as fair, and it was recommended that Plaintiff be seen by a physical therapist twice a week for four weeks. (R. at 401−402.) Plaintiff did not, however, seek physical therapy after March 2012. (R. at 45−46.)

**B.     State-Agency Physicians**

    **1.  Records Related to Plaintiff's Physical RFC**

On October 11, 2011, Phillip Swedberg, M.D. performed a consultative examination of Plaintiff. (R. at 385−92.) Dr. Swedberg wrote that Plaintiff's chief complaint was low back pain but that Plaintiff admitted that he had not sought medical treatment for his back problems since 2009. (R. at 390.) Dr. Swedberg also wrote that Plaintiff was 5-feet-9-inches tall and 230 pounds; ambulated with normal gate; was comfortable sitting and supine; had 5 out of 5 muscle strength throughout; and exhibited no evidence of joint abnormalities. (R. 391−92.) Dr. Swedberg noted that Plaintiff did have difficulty bending forward and diminished knee flexion. (R. at 391−92.) Dr. Swedberg wrote that his impressions were that Plaintiff had low back pain

7

without radiculopathy and exogenous obesity.  (R. at 392.)  Dr. Swedberg opined that Plaintiff "appeared capable of performing at least a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying light weight objects," and that Plaintiff had no difficulties "reaching, grasping, and handling objects."  (R. at 392.)

On November 11, 2011, state-agency reviewer, Teresita Cruz, M.D., reviewed Plaintiff's file.  (R. at 91−109.)  Dr. Cruz opined that Plaintiff was capable of occasionally lifting twenty pounds; frequently lifting ten pounds; standing or walking about six hours out of an eight hour workday; and sitting about six hours out of an eight hour workday.  (R. at 102.)  Dr. Cruz further opined that Plaintiff was capable of occasionally climbing stairs and kneeling, but that Plaintiff could never climb ladders, ropes, or scaffolds, balance, or crawl.  (R. at 103.)  Dr. Cruz also concluded that Plaintiff should avoid all exposure to vibrations and hazards.  (*Id*.)  Dr. Cruz noted that this RFC was an adoption of the RFC from the first unfavorable determination.  (*Id*.)  On February 26, 2012, state-agency reviewer, Anton Freihofner, M.D., reviewed Plaintiff's file and adopted the same RFC.  (R. at 131−47.)

**2. Records Related to Plaintiff's Mental RFC**

On August 8, 2011, Marc E. Miller, Ph.D., performed a consultative examination of Plaintiff.  (R. at 380−85.)  Dr. Miller wrote that Plaintiff rated his depression as a 0 on a scale of 1 to 10.  (R. at 382.)  Dr. Miller also wrote that Plaintiff related possible auditory hallucinations, but that he questioned the authenticity of this claim.  (*Id*.)  Dr. Miller indicated that Plaintiff reported driving, preparing his own meals, doing laundry, grocery shopping, and taking care of his own money management.  (*Id*.)  Dr. Miller further indicated that Plaintiff described his hobbies as writing, video games, and painting.  (*Id*.)  In a narrative assessment, Dr. Miller opined that Plaintiff had no difficulties understanding, remembering, and carrying out one and two step

8

job instructions; and had no difficulties maintaining attention span and concentration. (R. at 382−83.) Dr. Miller also opined that Plaintiff had significant impairments with regard to interacting with co-workers, supervisors, and the public; and possessed a poor ability to deal with stress and pressure in a work setting. (R. at 383.) Dr. Miller diagnosed Plaintiff with borderline personality disorder. (Id.)

On February 24, 2012, state-agency reviewer, Tony Hoyle, Psy.D., reviewed Plaintiff's file. (R. at 131−47.) Dr. Hoyle adopted the mental residual functioning capacity from the first unfavorable determination. (R. at 143.) In so doing, Dr. Hoyle opined that that Dr. Miller's assessment should be given other weight because the evidence suggested that Plaintiff's social and stress limitations were lesser than that opined by Dr. Miller. (R. at 140.)

## IV. THE ADMINISTRATIVE DECISION

ALJ Sferrella initially noted that the record contained new evidence developed after ALJ Termin's unfavorable decision on June 11, 2009. (R. at 13-15.) ALJ Sferrella then engaged in the five-step sequential evaluation of Plaintiff's evidence.[1] At step one of the sequential evaluation, ALJ Sferrella found that Plaintiff had not engaged in substantial gainful activity since

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?
    2. Does the claimant suffer from one or more severe impairments?
    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue,* 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001).

his amended alleged onset date of June 12, 2009. (R. at 15.) At step two, ALJ Sferrella found that Plaintiff had the same severe physical impairments that ALJ Temin found: degenerative disc disease of the lumbar and thoracic spine. (*Id.*) ALJ Sferrella then concluded the evidence supported a finding that Plaintiff also had the severe physical impairment of obesity. (*Id.*)[2] At step three, ALJ Sferrella concluded that Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the evaluation, ALJ Sferrella found that the new evidence did not support a different RFC, and thus, ALJ Sferrella adopted the RFC previously set forth by ALJ Termin. (R. at 16−17.)

Relying on the VE's testimony, ALJ Sferrella concluded that a significant number of jobs existed in the local and national economy that could be performed by Plaintiff. (R. at 22.) ALJ Sferrella therefore concluded that Plaintiff was not disabled under the Social Security Act.

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers,* 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.,* 25 F.3d 284, 286 (6th Cir. 1994)).

---

[2] Unlike ALJ Termin, ALJ Sferrella did not find that Plaintiff had the severe physical impairment of scoliosis. (R. at 73, 15.) Plaintiff did not appeal that determination.

10

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB,* 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (quoting *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers,* 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

Plaintiff maintains that ALJ Sferella erred by improperly adopting the RFC from the prior unfavorable determination. Specifically, Plaintiff argues that ALJ Sferella failed to properly consider the severe impact of obesity. The Undersigned disagrees.

### A.   Principles of *Drummond*

In *Drummond*, the United States Court of Appeals for the Sixth Circuit held that principles of *res judicata* apply to both claimants and the Commissioner in Social Security cases. *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837, 841–42 (6th Cir. 1997.) The *Drummond* Court specifically held that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842. Accordingly, the Sixth Circuit reasoned that when an ALJ seeks to deviate from a prior ALJ's

decision, "[t]he burden is on the Commissioner to prove changed circumstances and therefore escape the principles of *res judicata.*" *Id.* at 843. Applying this approach, the *Drummond* Court concluded that an ALJ was bound by a previous ALJ's determination that the claimant retained the RFC to perform sedentary work because evidence did not indicate that the claimant's condition had improved. *Id.* at 843.

Following *Drummond,* the Social Security Administration issued AR 98–4(6), which provides, in pertinent part, as follows:

> [W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).

Since *Drummond* and AR 98–4(6), both the Sixth Circuit and this Court have indicated that when a claimant seeks to avoid application of a prior ALJ's finding, he or she must produce evidence demonstrating that his or her condition has worsened since the time of the prior determination. *See, e.g., Caudill, Comm'r of Soc. Sec.,* 424 F App'x. 510, 515 (6th Cir. 2011) (holding that an ALJ was justified, under *Drummond,* in adopting a previous ALJ's finding that the claimant had a "limited education" because the claimant "introduced no new or additional evidence with respect to illiteracy versus limited education" (internal quotations omitted)); *Holt v. Astrue,* No. 1:10–cv–439, 2011 WL 3861891, at *7 (S.D. Ohio July 6, 2011) ("[B]ecause Plaintiff failed to present any new and/or material evidence in the record that showed Plaintiff's condition had worsened since [the] previous unfavorable decision, [the ALJ] acted properly by following *Drummond* and . . . adopting said decision.") (Report and Recommendation later

adopted).

**B.      Plaintiff's Obesity**

In this case, ALJ Sferella examined updated evidence and determined that it supported a finding that Plaintiff was obese.  (R. at 15.)  Ruling 02–1p addresses the evaluation of obesity for the purpose of disability claims.  The Ruling assures that the Commissioner will consider a claimant's obesity in evaluating steps two through five of the sequential analysis.  SSR 02–1p, 2000 WL 628049, at *3 (Sept. 12, 2003).  When the medical or clinical records display a consistently high body weight or body mass index ("BMI"), an ALJ will typically rely on his or her "judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity."  *Id.*  Obesity will qualify as a severe impairment pursuant to step two "when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  *Id.* at *4.  "[N]o specific level of weight or BMI [ ] equates with a 'severe' or 'not severe' impairment."  *Id.*  The ALJ "will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."  *Id.*

Ruling 02–1p further recognizes that obesity may contribute to and complicate "chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems."  *Id.* at *3.  The Ruling also cautions against making "assumptions about the severity or functional effects of obesity combined with other impairments" and stresses that "[o]besity in combination with another impairment may or may not increase the severity of functional limitations of the other impairment."  *Id.* at *6.

The United States Court of Appeals for the Sixth has emphasized that "Social Security

Ruling 02–01p does not mandate a particular mode of analysis." *Bledsoe v. Barnhart,* 165 F. App'x 408, 411 (6th Cir. 2006) (finding, in case where medical reports described claimant as morbidly obese, that "the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity"); *see also Young v. Comm'r of Soc. Sec.,* No. 3:09 CV 1894, 2011 WL 2182869, at *7 ("The Sixth Circuit requires the ALJ to mention obesity either expressly or indirectly where the record includes evidence of obesity's effects on the claimant's impairments."). Further, when the record contains only a limited amount of information concerning obesity, the Sixth Circuit has indicated that an ALJ may provide less articulation. *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 577 (6th Cir. 2009) (holding that when the claimant failed to list obesity in his application and when there was scant evidence of obesity in the record, it was sufficient for the ALJ to merely acknowledge the obesity diagnosis in his decision).

Finally, pursuant to the regulations, a claimant "must furnish medical and other evidence that [the Comissioner] can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis." 20 CFR § 404.1512. Accordingly, a claimant relying on obesity should provide evidence that obesity affected his or her ability to work. *See Cranfield v. Comm'r, Soc. Sec.,* 79 F. App'x 852, 857–58 (6th Cir. 2003) (concluding that even though doctor reports indicated obesity, the claimant's failure to provide evidence that her obesity affected her ability to work meant that "the ALJ and the district court had no obligation to address [her] obesity"); *see also May v. Astrue,* No. 4:10CV1533, 2011 WL 3490186, at *6 (N.D. Ohio June 1, 2011) (holding that an ALJ had no obligation to address a claimant's obesity when, even though the record contained a diagnosis of obesity, he did not demonstrate "functional limitations

ascribed to the condition[ ]").

In this case, contrary to Plaintiff's assertions, ALJ Sferrella adequately considered Plaintiff's obesity throughout the determination. At step 2, ALJ Sferrella found that obesity was a severe impediment. (R. at 15.) At step 3, ALJ Sferrella stated that Plaintiff's weight had been "carefully considered within the parameters of Social Security Rule 02-02p." (R. at 16.) ALJ Sferella also noted at step 3 that Plaintiff's obesity had "not resulted in any end-organ damage, cardiac-related impairment, or uncontrolled hypertension or diabetes." (Id.) At step four, ALJ Sferella wrote that Plaintiff was five feet and nine inches tall, weighed 230 pounds, and had a body mass index of 34, which indicated obesity. At step 4, ALJ Sferella also explained that Plaintiff's obesity was "considered in its effect both on the severity of [Plaintiff's] limitations and on his residual functional capacity." (R. at 20.) Sferella ultimately concluded, however, that Plaintiff's "current obesity does not impact his overall physical functional capacity as found in the previous decision, as there is no medical report or opinion that [Plaintiff's] obesity seriously reduces his ability to work." (R. at 20.)

Substantial evidence supports that determination. The record is devoid of any evidence that obesity impacts Plaintiff's ability to work. Nor does Plaintiff direct the Undersigned's attention to any portion of the medical evidence indicating that his obesity impacts his ability to perform work or other tasks. Indeed, Plaintiff testified that no doctor ever told him that his weight was an issue. (R. at 43.) Plaintiff is, however, required to provide evidence that obesity affected his or her ability to work. *See Cranfield,* 79 F. App'x at 857–58; *May,* 2011 WL 3490186, at *6.

Plaintiff appears to argue that because ALJ Sferrella wrote at one point that Plaintiff's "current obesity does not impact his overall physical functional capacity," ALJ Sferrella may not

15

have considered Plaintiff's obesity in relation to his mental limitations. This argument is unavailing. Although an ALJ must consider obesity, there is no mandated mode of analysis. *Bledsoe,* 165 F. App'x at 411. Moreover, when a plaintiff, like this one, presents limited evidence of the effects of his obesity, an ALJ may give obesity less consideration. *Nejat,* 359 F. App'x at 577. In such instances, an ALJ need only acknowledge obesity. *Id.* Here, ALJ Sferrella not only acknowledged obesity, he thoroughly discussed Plaintiff's obesity throughout the determination. Any purported failure to be more explicit does not constitute reversible error.

Perhaps more importantly, Plaintiff has made no attempt to demonstrate how obesity caused his condition to worsen after the first unfavorable determination. Nor does it appear that the record could support such a showing. Instead, it appears that Plaintiff's physical condition remained constant or nearly the same— Plaintiff testified that he "wasn't sure" if his back pain had gotten worse, and thought it maybe "stayed steady at the level it was at," although it "may have gotten a little worse." (R. at 37.) Plaintiff also testified that his issue with his legs was "about the same" as it had been before the first unfavorable determination on June 11, 2009. (R. at 40.) Moreover, Plaintiff testified that his mental health problems were manageable and did not cause a problem with work. (R. at 53−54.) In sum, substantial evidence supports the determination that Plaintiff's evidence did not demonstrate a changed condition and that it was proper to adopt the prior RFC pursuant to *Drummond*.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECCOMMENDED** that the Court **OVERRULE** Plaintiff's single assignment of error and **AFFIRM** the Commissioner of Social Security's decision.

16

## VIII. PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendations, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.,* 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson,* 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal ....") (citation omitted)).

Date:  February 22, 2016            /s/ *Elizabeth A. Preston Deavers*
                                                         ELIZABETH A. PRESTON DEAVERS
                                                         UNITED STATES MAGISTRATE JUDGE